**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA**

| | | |
|---|---|---|
| **ROBERT DIAL** | ) | |
| | ) | |
| v. | ) | **Case No. 1:23-cv-00071** |
| | ) | |
| **KILOLO KIJAKAZI, ACTING** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |
| **ADMINISTRATION** | ) | |

**To:    The Honorable Aleta A. Trauger, United States District Judge**

## REPORT AND RECOMMENDATION

Plaintiff Robert Dial filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 11)[1], to which Defendant SSA has responded (Docket No. 13). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 14.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 11) be **DENIED**.

---

[1] Plaintiff's motion includes an embedded supporting memorandum of law rather than a separately filed one as required by Local Rule 7.01(a)(2).

# I.    INTRODUCTION

On October 19, 2020, Plaintiff proactively filed an application for SSI. (Transcript of the Administrative Record (Docket No. 9) at 18).[2] In his application, Plaintiff alleged disability due to "bipolar with psychotic features," "severe mood swings," and "depression" with an onset date of October 19, 2020.[3] (AR 241.) Plaintiff had previously filed an application for SSI on September 7, 2017 alleging disability due to similar reasons. (AR 18, 71.) Administrative Law Judge ("ALJ") Kerry Morgan denied the 2017 application on April 19, 2019. (AR 81.) Plaintiff did not request the Appeals Council to review the unfavorable decision on the 2017 application, and therefore it became administratively final. (AR 18.)[4]

With respect to Plaintiff's most recent 2020 application, it was denied initially on July 27, 2021 and upon reconsideration on February 24, 2022. (AR 18.) On October 27, 2022, Plaintiff appeared with a non-attorney representative and testified at a telephonic hearing conducted by ALJ Elizabeth Neuhoff. (AR 18.) On November 10, 2022 the ALJ denied the claim. (AR 18–30.) On September 20, 2023, the Appeals Council denied Plaintiff's request for a review, thereby making the ALJ's decision the final decision of the SSA. (AR 1–3.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

---

[2] The Transcript of the Administrative Record is hereinafter referred to by "AR" and the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

[3] During the October 27, 2022 hearing, Plaintiff's non-attorney representative amended the onset date from January 1, 2010 to October 19, 2020. (AR 50.)

[4] Plaintiff also filed an application for SSI in 2012, which was denied at the initial and reconsideration levels and then dismissed for failure to establish good cause after Plaintiff failed to attend a hearing. (AR 71.)

2

## II. THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in the unfavorable decision issued on

November 10, 2022:

1. The claimant has not engaged in substantial gainful activity since October 19, 2020, his amended alleged onset date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: schizophrenia spectrum, anxiety disorder and depressive disorder (20 CFR 416.920(c)).

3. The claimant does not have a severe impairment or combination of severe impairments that meet or medically equal the severity of one of the listed impairments in section 12.00 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: He is able to understand, remember and perform simple tasks and instructions and he is able to sustain concentration, persistence or pace for those tasks and instructions with appropriate breaks. The claimant is able to interact appropriately with supervisors and coworkers for work-only related matters and he should have no contact with the general-public. The claimant is able to adapt to occasional and gradual changes in his workplace.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 7, 1979 and was 41 years old, which is defined as a younger individual age 18-49, on his amended alleged onset date (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 19, 2020, his amended alleged onset date (20 CFR 416.920(g)).

(AR 21–29.)

3

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSIONS AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, if the

claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on his residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B.    The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) he had not engaged in substantial gainful activity, and (2) his impairments of schizophrenia spectrum, anxiety disorder, and depressive

disorder were severe.[5] (AR 21–22.) However, the ALJ determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 22–23.) At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations. (AR 23–28.) At step four, the ALJ found that Plaintiff had no past relevant work. (AR 28.) Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 28–29.) Therefore, the ALJ concluded that Plaintiff had not been under a disability since October 19, 2020, his alleged onset date. (AR 29.)

## C.    Plaintiff's Assertions of Error

Plaintiff makes two assertions of error: (1) the ALJ failed to properly consider the evidence in assessing Plaintiff's RFC; and (2) the ALJ failed to properly weigh the evidence related to Plaintiff's disabling symptoms. (Docket No. 11-1 at 11–22.) Accordingly, Plaintiff requests that this case be remanded for further consideration under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all

---

[5] The ALJ found that Plaintiff's kidney stones and mild obesity did not cause more than minimal limitation to Plaintiff's ability to perform basic work activities and, accordingly, were non-severe impairments. (AR 21–22.)

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

### 1. The ALJ's Consideration of the Evidence in Assessing Plaintiff's RFC.

For his first assertion of error, Plaintiff argues that substantial evidence does not support the ALJ's assessment of his RFC for three reasons: (1) the ALJ failed to consider a "Tennessee Clinically Related Group (CRG) Form," which Plaintiff argues is a medical source statement regarding his ability to function mentally (Docket No. 11-1 at 13–14); (2) the ALJ failed to consider medical evidence that supported a greater mental limitation than the one the ALJ assessed (*id.* at 14–17); and (3) when interpreting medical evidence, the ALJ improperly substituted her lay opinion for the opinions of medical professionals (*id.* at 17–18).

### a. The ALJ's Consideration of the "Tennessee Clinically Related Group (CRG) Form"

As a preliminary matter, RFC is an assessment of "the most you can still do despite your limitations." 20 C.F.R. § 416.945(A)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case record. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. *Id.* § 416.913(a)(1)–(5). At issue here is "medical opinion" evidence, which is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in four categories of abilities. *Id.* § 416.931(a)(2). Those four categories include the ability to perform physical work activities, mental work activities, and other demands of work activities, and to adapt to environmental conditions. *Id.* § 416.931(a)(2)(A)–(D).

When evaluating medical opinions, the presiding ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. 20 C.F.R. § 416.920c(a)-(c).

Here, the ALJ found that that "there are no medical[] source statements or opinions from any of the claimant's health care providers in the record regarding his ability to function mentally." (AR 28.) Plaintiff argues that this statement was made in error because the ALJ should have considered a "Tennessee Clinically Related Group (CRG) Form" as a medical opinion. (Docket No. 11-1 at 13–14.) The CRG Form is dated June 16, 2008 and appears to have been filled out when Plaintiff was first treated by Centerstone Community Mental Health. (AR 303–05.) However, the document is not signed. (*Id.*) The first and second pages contain a "Functional Assessment," which focused on Plaintiff's "lowest level of functioning during the past six months." (AR 303–04.) This assessment concludes that Plaintiff had "moderate" limitations in his ability to perform activities of daily living and his concentration, task performance, and pace; and "marked" limitations in his interpersonal functioning and his adaptation to change. (*Id.*) The third page contains a determination that Plaintiff belonged to "Group 1 – Persons with Severe and Persistent Mental Illness" and assessed him with a current Global Assessment of Functioning (GAF) score of 48. (AR 305.)

The Court finds that this CRG Form is not "medical opinion" evidence, and therefore the ALJ was not required to consider it when assessing Plaintiff's RFC. As stated above, "medical opinion" evidence is "a statement from a medical source about what you can still do despite your

impairment(s) and whether you have one or more impairment-related limitations or restrictions" in four categories of abilities. 20 C.F.R. § 416.913(a)(2). A "medical source" is one of eight defined categories, including a licensed physician, psychologist, advanced practice registered nurse, or physician assistant. 20 C.F.R. § 416.902(a). The CRG Form is not a statement from any identifiable source, let alone a licensed physician, psychologist, advanced practice registered nurse, or physician assistant, so it is not from a "medical source" and is not a "medical opinion." *Id.* Because the CRG Form does not constitute a "medical opinion," the ALJ was not required to assess its persuasiveness or explain why the opinions were not adopted. *See Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *3 (6th Cir. Nov. 22, 2022) (citations omitted); *Albadiry v. Colvin*, No. 3:13-0840, 2014 WL 4533349, at *13–14 (M.D. Tenn. Sept. 11, 2014) (finding that a CRG Form was completed by a licensed social worker, so it was not an acceptable "medical source"). For these reasons, this Court rejects Plaintiff's assertion of error.

### b. The ALJ's Consideration of the Record Evidence

Plaintiff next argues that the record evidence supports greater mental limitations than the ALJ incorporated into the RFC finding. (Docket No. 11-1 at 14–17.) He asserts that the limitations placed by the ALJ do not account for "his well-documented aggressive behavior, his auditory and visual hallucinations, and his well-documented paranoia." (*Id.* at 14.) To support his position, he refers to "early treatment records" from July 2012 to February 2018[6] and to more recent treatment

---

[6] These include medical records from Centerstone dated July 19, 2012 (AR 326–31), December 4, 2012 (AR 332–37), November 4, 2015 (AR 312–18), and February 2, 2018 (AR 344–53). Plaintiff referred to the February 2, 2018 records as being dated May 21, 2021, but this is incorrect. The records are dated February 2, 2018 and were reviewed on May 21, 2021.

9

records from August 2020 to May 2022,[7] all of which he believes show persistent symptoms and a history of depression, suicidal ideation, auditory and visual hallucinations, and prior hospitalizations. (AR 14–17.) In response, the SSA argues that the ALJ was bound by the RFC findings made by ALJ Morgan in her April 19, 2019 unfavorable decision regarding the 2017 application, so an examination of the above referenced records – most of which predated Plaintiff's alleged onset date of October 19, 2020 – was not necessary. (Docket No. 13 at 7–8.)

The Court must first determine whether the ALJ was obligated to defer to the RFC formulated by the prior ALJ who handled Plaintiff's 2017 application. In the decision at issue, the ALJ cited to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), to support the statement that "adjudications of any subsequently filed applications under the same titles are bound by the residual functional capacity . . . in the prior final decision, absent new and material evidence of a significant change in the claimant's medical condition during a relevant period." (AR 19.)[8]

In *Drummond*, the Sixth Circuit required an ALJ presiding over a claimant's second application for disability benefits to defer to the RFC formulated by the ALJ who handled the initial application. *See id.* at 842 ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."). The Commissioner opted to codify the *Drummond* decision in Acquiescence Ruling 98-4(6), which mandated the following:

---

[7] These include medical records from Centerstone on August 26, 2020 (AR 434), October 27, 2020 (AR 372), and November 20, 2020 (AR 371), and from Mental Health Cooperative dated November 15, 2021 (AR 479), December 22, 2021 (AR 483), and May 10, 2022 (AR 488).

[8] The ALJ also referenced *Dennard v. Sec'y of Health & Human Svcs.*, 907 F.2d 598 (6th Cir. 1990), but that case is irrelevant here because it focused on whether "a prior determination . . . regarding the exertional level of a claimant's past work was binding in subsequent proceedings." *Kolomjec v. Sec'y of Health & Human Servs.*, 940 F.2d 660 (6th Cir. 1991) (table). Because the exertional level of Plaintiff's past work is not at issue, the Court will not address *Dennard* in any further detail.

10

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29771 (Jun. 1, 1998). This ruling represented the prevailing interpretation of *Drummond* in this circuit for many years. *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 362 (6th Cir. 2004) ("In *Drummond,* this court held that, absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.").

However, this prevailing approach shifted in 2018 following the Sixth Circuit's decision in *Earley v. Comm'r of Soc. Sec.*, which sought to loosen *Drummond*'s rigid grip on successive disability applications:

> Unusual facts, it seems to us, led to some overstatement in *Drummond* but not to an incorrect outcome. *Drummond* correctly held that substantial evidence did not support the ALJ's decision. And *Drummond* correctly held that res judicata may apply to administrative proceedings . . . . If an individual, say, files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application. And res judicata would apply in both directions: to bar the government and individuals from relitigating a past final decision for no reason other than to take a second bite at the same apple.

893 F.3d 929, 933 (6th Cir. 2018) (internal citations omitted). The Sixth Circuit also made clear that any application submitted by the same claimant for a new alleged period of disability would warrant "fresh review" of the administrative record to determine whether the claimant's condition had worsened or otherwise justified a change in the analysis from the previous administrative opinion. *Id*. at 934. The Sixth Circuit cautioned, however, that a claimant filing a second

11

application "should not have high expectations about success if the second filing mimics the first one." *Id.* at 933.

The Court begins its analysis by noting the ALJ's application of *Drummond* in the instant case:

> Under the provisions of . . . *Drummond v. Commissioner of Social Security*, 126 F. 3d. 837 (1997) (*Drummond*), and attendant acquiescence rulings, adjudications of any subsequently filed applications under the same titles are bound by the residual functional capacity . . . in the prior final decision, absent new and material evidence of a significant change in the claimant's medical condition during a relevant period.
>
> Review of new and material evidence establishes the claimant's medical condition has not significantly changed since ALJ Morgan's prior unfavorable decision was rendered, and that . . . *Drummond*, *et. al.*, are therefore applicable in this matter.
>
> * * *
>
> ALJ Morgan found the claimant was essentially capable of performing the limited range of mental work outlined above in her prior unfavorable decision dated April 19, 2019 (Exhibit C2A). Review of new and material evidence establishes the claimant's medical condition has not significantly changed since ALJ Morgan's prior unfavorable decision was rendered, and that . . . *Drummond*, *et. al.*, are therefore applicable in this matter. Thus, the undersigned adopts ALJ Morgan's residual functional capacity assessment as required by the same.

(AR 19, 23.) From these statements, it appears that the ALJ relied on the broad interpretation of *Drummond* that the Sixth Circuit renounced in *Earley*, believing that she was bound by the initial RFC. *See* 893 F.3d at 932 ("That is not how it works. An individual may file a second application — for a new period of time — for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold."). The time period covered by Plaintiff's second disability claim (October 19, 2020 to November 10, 2022) is different than the time period covered by his first disability claim (September 1, 2017 to April 19, 2019). Accordingly, *res judicata* does not apply and the ALJ was not bound by the earlier decision. *See Ratliff v. Saul*, No. 7:18-CV-114-HRW, 2020 WL 855958,

at *3 (E.D. Ky. Feb. 20, 2020) ("ALJs are permitted to review prior ALJ findings, but are not bound by those findings; rather, ALJs should give a 'fresh review' of the record in adjudicating later applications that involve distinct time periods.") (citing *Earley*, 893 F.3d at 934).

However, the ALJ's failure to explicitly apply *Earley* would only constitute reversible error if the ALJ failed to provide a "fresh look" and independently review Plaintiff's most recent application covering the period of October 19, 2020 to November 10, 2022. *See Earley*, 893 F.3d at 931; *Burrage v. Saul*, No. 2:18-cv-00079, 2019 WL 3780095, at * 5 (M.D. Tenn. Aug. 12, 2019); *Lambert v. Comm'r of Soc. Sec.*, No. 1:18-CV-116, 2019 WL 336903 (S.D. Ohio Jan. 28, 2019) ("Because [the ALJ] gave a 'fresh look' to the new evidence, a remand under *Earley* is not warranted."). The Court finds that the ALJ independently reviewed medical records from the period at issue and adequately discussed the mental health findings within those records.

In her decision, the ALJ thoroughly discussed Plaintiff's visits to mental health providers beginning on August 6, 2020 (two months before Plaintiff's amended alleged onset date) and ending on May 10, 2022. (AR 24–27.) At the first of these visits with Centerstone, Plaintiff met with a health professional via telephone and stated that he was having issues with flashbacks, racing thoughts, paranoia, irritability, and depression. (AR 24.) He was described as having "appropriate" mood, speech, appearance, and behavior; as being "cooperative and motivated;" and as having "good insight into his problems and fair Judgment." (AR 24.) He was diagnosed with posttraumatic stress disorder and bipolar I disorder, and a treatment plan was created. (AR 25.) Plaintiff continued to undergo routing counseling with Centerstone through March 2021. (AR 26.) However, the records indicate that Plaintiff did not seek or receive treatment at Centerstone after this date. Accordingly, Plaintiff was discharged from treatment at Centerstone on October 22, 2021 because he did comply with his treatment plan. (AR 26.)

In November 2021, Plaintiff contacted the Mental Health Cooperative via telephone and reported he had been diagnosed with schizophrenia at Centerstone, but felt that he had been mistreated there so did not want to continue receiving treatment from them. (AR 26.) He reported that he was "having numerous severe schizophrenia, posttraumatic stress, anxiety, bipolar and depression problems and symptoms at that time." (AR 26.) He was reported to be "fully alert, oriented, calm and cooperative"; to have "linear, logical and goal directed thoughts"; and to have a "normal" mental status examination in all regards except for depressed mood and broadcasting thoughts. (AR 26.) He was diagnosed with a "schizoaffective disorder, bipolar type' and "cannabis use disorder, moderate, dependence" and was advised to return and undergo a psychological evaluation. (AR 26.) In December 2021, Plaintiff underwent the recommended in-person psychological evaluation at Mental Health Cooperative. (AR 483–86.) He was noted to have an "anxious, congruent affect" but no evidence of "delusional thought content." (AR 485.) His diagnosis remained the same and he was prescribed medication. (AR 485–86.)

Plaintiff did not seek further treatment until May 2022, when he returned to Mental Health Cooperative and reported that he had stopped taking medication, was experiencing auditory and visual hallucinations, could not sleep, and was anxious, depressed, and irritable. (AR 26.) His diagnoses remained unchanged, and he was once again encouraged to take medication and return for a follow up visit the next month. There are no other medical treatment notes in the record from Mental Health Cooperative or any other providers, so it appears that Plaintiff's last time to receive treatment was this May 2022 visit.

Based upon an evaluation of this medical evidence, the ALJ found that "the objective medical evidence simply does not document the severe and disabling ongoing subjective symptoms the claimant alleges he suffers from because of his mental problems. Instead, it indicates

they are controlled to a great extent by his treatment plan as long as he follows it as instructed." (AR 27.) The ALJ also found that the objective medical evidence established that Plaintiff's condition had not "significantly changed" since the prior ALJ's unfavorable decision was rendered. (AR 28.) Accordingly, the ALJ found that the RFC was appropriate.

In short, although the ALJ erred when she stated that she was bound by the earlier decision, this statement alone is not enough to warrant remand because the ALJ complied with *Earley* and provided a "fresh review" of Plaintiff's medical records from 2020 to 2022. Although Plaintiff may differ with the ALJ on her evaluation of the record medical evidence, this Court's role is not to inquire "if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). *See also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support the opposite conclusion"). The ALJ thoroughly discussed the medical evidence in the record during the period at issue. Accordingly, the ALJ's finding regarding Plaintiff's mental limitations is supported by substantial evidence, and the Court may not reverse it. *See Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). For these reasons, this Court rejects Plaintiff's assertion of error.

### c. The ALJ's Lay Opinion

Finally, Plaintiff states that the ALJ may not substitute her lay opinion for that of medical professionals. (Docket No. 11-1 at 17 (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App's 181, 194 (6th Cir. 2009); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).) However, Plaintiff provides no further argument to support this statement or to evidence how the ALJ allegedly

substituted her lay opinion for that of medical professionals in this instance. Because Plaintiff has failed to support this contention, the Court rejects this particular argument.

### 2. The ALJ's Consideration of Plaintiff's Disabling Symptoms

In his second assertion of error, Plaintiff contends that the ALJ "improperly evaluated [his] disabling symptoms"[9] because she "unduly relied on the objective evidence in discounting" those symptoms. (Docket No. 11-1 at 18–19.)

"An individual's statements as to 'pain or other symptoms will not alone establish that [he is] disabled.'" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process. SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms. *Id.* at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the

---

[9] A "symptom" is defined as an individual's own description or statement of her impairment. SSR 16-3p, 2017 WL 5180304, at *2.

claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at *7–8.

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important.[10] If an individual's statements are *consistent* with the objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if an individual's statements are *inconsistent* with the objective medical evidence, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the

---

[10] The precursor to SSR 16-3p, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements regarding the limiting effects of his alleged symptoms. 1996 WL 374186 at *3 (July 2, 1996). Although the Commissioner removed any reference to "credibility" in SSR 16-3p, there is no substantive change in the ALJ's analysis, and the case law pertaining to credibility evaluations under SSR 96-7p remains applicable. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *see also Young v. Berryhill*, No. 3:17-cv-395, 2018 WL 1914732, at *6 (W.D. Ky. April 23, 2018) ("The analysis under SSR 16-3p otherwise is identical to that performed under SSRI 96-7p."). As noted by a sister district court, reviewing courts have therefore largely "decline[d] to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").

A credibility assessment is firmly within the ALJ's discretion and not to be decided anew by a reviewing court. *Vaughn v. Berryhill*, No. 3:16–cv–02821, 2018 WL 632377, at *6 (M.D. Tenn. Jan. 11, 2018). It is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (quoting *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003)). A reviewing court will not disturb an ALJ's credibility finding "absent compelling reason." *Id.* (quoting *Smith v. Comm'r*, 307 F.3d 377, 379 (6th Cir. 2001)).

In her decision, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence" and that the "objective medical evidence and [Plaintiff's] course of treatment are inconsistent with his subjective allegations of disabling mental problems." (AR 24, 27.) In her decision, the ALJ reviewed the record medical evidence (as discussed above), Plaintiff's ability to obtain treatment, Plaintiff's activities of daily living, and Plaintiff's work history. (AR 24–28.) The ALJ did not review any opinion evidence,[11] State agency medical source statements, or State agency medical opinions because none were in the record. (AR 28.)

_____

[11] *See* discussion *supra*, Section IV.C.1.a.

18

In support of his position that the ALJ erred in considering his disabling symptoms, Plaintiff makes four specific arguments. (Docket No. 11-1 at 19–22.) First, he alleges that the ALJ cherry-picked evidence by not considering earlier medical evidence. (*Id.* at 19.) As discussed above, the Court disagrees that the ALJ erred in her consideration of the record medical evidence. Further, the ALJ "is not required to analyze the relevance of each piece of evidence individually." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011).

Second, Plaintiff asserts that, when considering Plaintiff's treatment history, the ALJ ignored evidence that Plaintiff was afraid to leave his home and that he had poor insight. (*Id.*) Plaintiff points to medical records from Plaintiff's prior treatment at Centerstone on July 19, 2012 (AR 326), November 4, 2015 (AR 312), February 2018 (AR 351) and more recent treatment at Mental Health Cooperative on November 15, 2021 (AR 481), December 22, 2021 (AR 483), and May 10, 2022 (AR 488). However, as discussed above, the ALJ considered and thoroughly discussed the recent medical records from Plaintiff's most recent application covering the period of October 19, 2020 to November 10, 2022. Further, the ALJ is not required to discuss all medical records individually. *See Bailey*, 413 F. App'x at 855. For these reasons, the Court finds that the ALJ did consider Plaintiff's fears regarding leaving his home and Plaintiff's noted poor insight, but nevertheless found that the objective medical evidence did not document the symptoms that Plaintiff alleged. (AR 27.)

Third, Plaintiff argues that the ALJ improperly evaluated his daily activities. (Docket No. 11-1 at 29.) In her decision, the ALJ stated that Plaintiff did not return his Function Reports as requested and noted that his testimony indicated that he was "essentially unable to do anything because of his mental problems." (AR 27.) She stated that the objective medical evidence showed that Plaintiff takes care of his grandmother, cleans and performs household chores, navigates the

19

internet and engages in online activities, watches television for pleasure, gets along with his family members, manages his personal finances, drives, shops, and runs errands. (*Id.*) Plaintiff, however, argues that his hearing testimony contradicts these findings and shows that he does not perform these activities in the way that the ALJ characterized them. (Docket No. 11-1 at 29.)

The Court agrees with Plaintiff that the ALJ mischaracterized his hearing testimony. For example, the ALJ stated that Plaintiff "cleans and performs household chores." (AR 27.) However, during the hearing, Plaintiff testified that he does no work inside or outside of the house. (AR 54-55.) The ALJ also stated that Plaintiff "goes out alone, drives, shops and run errands," (AR 27) but his testimony indicates that he does not drive (AR 58). In its response, the SSA does not comment on the discrepancies between the ALJ's description of Plaintiff's daily living activities and Plaintiff's testimony regarding his daily living activities.

Nevertheless, the ALJ's characterization of Plaintiff's activities of daily living is based on more than hearing testimony. The ALJ also reviewed the "objective medical record evidence." Based on a review of the record, the ALJ concluded that Plaintiff's activities of daily living were inconsistent with his subjective allegations of disabling mental problems, but were consistent with the RFC. (AR 27.) Further, the ALJ characterized Plaintiff's testimony as stating that he was "essentially unable to do anything because of his mental problems." (*Id.*) Although the ALJ mischaracterized some of Plaintiff's hearing testimony, which may have been in error, the Court finds that her evaluation of Plaintiff's daily living activities and findings regarding the consistency of those activities was supported by substantial evidence. Further, the Court does not find that the ALJ improperly relied on Plaintiff's daily living activities to be comparable to typical work activities, as Plaintiff alleges. Instead, the ALJ found that these activities were inconsistent with Plaintiff's subjective allegations regarding his mental state.

Fourth and finally, Plaintiff argues that the ALJ improperly considered Plaintiff's work history when discounting his allegations of disabling symptoms. (Docket No. 11-1 at 21.) In her decision, the ALJ found that Plaintiff's work history was inconsistent with his subjective allegations of disabling mental problems because "nothing in the record indicates anything happened on or around [his amended alleged onset date of October 19, 2020] that prevented [Plaintiff] from working." (AR 27.) The ALJ also noted that Plaintiff had worked some in the first half of 2021. (*Id.*) However, Plaintiff's work history is a proper consideration in the ALJ's analysis of subjective complaints. *See Gilliam v. Comm'r of Soc. Sec.*, No. 2:18-cv-12793, 2019 WL 6112696, at *11 (E.D. Mich. Jul. 10, 2019) (citing *T.R. v. Berryhill*, No. 17-cv-5587, 2019 WL 1100266, at *12 (D. Minn. Mar. 8, 2019) ("SSR 16-3p incorporates the regulations, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which identify factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of the symptoms, including . . . prior work record . . . ")). Given the propriety of the ALJ's consideration and the "great weight and deference" that is afforded to an ALJ's credibility assessment, the Court finds that the ALJ's consideration of Plaintiff's work history when assessing his credibility is supported by substantial evidence.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for judgment on the administrative record (Docket No. 11) be **DENIED** and the Social Security Administration's decision be **AFFIRMED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified

time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge